**SIGNED this 9th day of March, 2017**

*/s/ Nicholas W. Whittenburg*
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

___

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Jimmy Ray Smith** | ) | No. 1:09-bk-15572-NWW |
| **Vicki Edwards Smith** | ) | Chapter 13 |
| | ) | |
| **Debtors** | ) | |
| | ) | |
| **Jimmy Ray Smith** | ) | |
| **Vicki Edwards Smith** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| v. | ) | Adv. No. 1:16-ap-01045-NWW |
| | ) | |
| **JP Morgan Chase Bank, N.A.** | ) | |
| | ) | |
| **Defendant** | ) | |

# M E M O R A N D U M

This adversary proceeding is before the court on the Motion to Dismiss filed by the defendant on February 14, 2017. Having considered the motion, supporting and opposing briefs, and the amended complaint, the court will grant the motion.

I.

The pertinent factual and procedural allegations stated in the amended complaint filed on January 26, 2017, may be summarized as follows. The plaintiffs filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on August 31, 2009. Their schedules of liabilities disclosed two mortgage debts secured by their residence, a first mortgage owed to Washington Mutual Bank in the amount of $28,527.25 and a second mortgage evidenced by a home equity line of credit (HELOC) owed to the defendant in the amount of $84,516.00. On September 22, 2009, the defendant filed proof of claim no. 6-1 in the amount of $84,240.54 for the second mortgage loan. The proof of claim references an account number ending in 8777. However, the loan agreement annexed to the proof of claim references a loan number ending in 0747. On October 23, 2009, the court confirmed a chapter 13 plan, which provided for "Washington Mutual (First Mortgage)" to be paid in full with 6% interest at the rate of $959.27 per month, and for the defendant to receive escrow payments of $152.10 per month on account of the first mortgage and a "maintenance" payment of $350.00 per month on account of its second mortgage.

On November 3, 2009, the defendant filed proof of claim no. 14-1 as assignee of Washington Mutual Bank. The proof of claim asserted a claim in the amount of $28,527.25, the balance of the first mortgage, and referenced an account number ending in 7654. On December 28, 2011, the defendant filed a notice that the monthly payment on the second mortgage debt (claim 6-1) would change to $292.47, stating that the account number ended in 0747. On January 23, 2013, the defendant filed a notice that the monthly payment on the first mortgage would change to $987.15, stating

that the account number ended in 7654. A copy of the notice of payment change is attached as Exhibit D to the amended complaint, and it indicates (although not mentioned in the body of the complaint) that the new escrow payment would be $228.78.

On January 4, 2014, the defendant released of record the deed of trust securing the first mortgage, a copy of which was attached to proof of claim no. 14-1.[1] The release includes the defendant's acknowledgment that the underlying indebtedness had been paid in full. In July or August 2014, the plaintiffs' attorney received a notice from the defendant indicating that a payment of $228.78 was being returned because the loan with an account number ending in 7654, the account number for the first mortgage, had a zero balance. The plaintiffs received a discharge on October 14, 2014.[2] On December 5, 2014, the standing chapter 13 trustee filed a final account indicating that $19,021.22 had been disbursed on the defendant's $84,516.00 second mortgage (claim 6-1) and that Washington Mutual's $28,527.25 first mortgage claim had been paid in full with interest. The plaintiffs allege that they believed the first mortgage had been satisfied. They also inexplicably allege that they believed that the defendant may have intended to release their obligations on the second mortgage. In December 2015, the plaintiffs received a letter from the defendant's attorneys threatening a foreclosure on account of an unspecified mortgage loan.

---

[1] The recording book and page numbers of the deed of trust referenced in the release are the same as the book and page numbers on the deed of trust a copy of which was attached to proof of claim no. 14-1.

[2] Paragraphs 29 and 33 of the amended complaint alleges that the debtors received a discharge on October 18, 2015, and paragraph 42 alleges that discharge was granted on October 14, 2016. Both dates are incorrect.

## II.

In assessing Rule 12(b)(6) motions, courts accept as true well-pleaded factual allegations; however, "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" receive no such deference. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Those allegations that are well-pleaded, when taken together, must "give notice to the defendant as to what claims are alleged" and must contain "'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009)). Nevertheless, detailed factual allegations are not necessary. *Hensley Mfg.*, 579 F.3d at 609 (citing *Twombly*, 550 U.S. at 555). "Plausibility" exists so long as the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## III.

### A.

The amended complaint asserts three claims for relief. The first is that the defendant violated the discharge order by taking actions "both during the bankruptcy and after discharge [which] have reasonably left the Debtors without any knowledge as to what the balance on the mortgage ending in x8777 is." The plaintiffs request "actual

damages, attorney fees and punitive damages in order to carry out the discharge order and to maintain the integrity of the discharge order with Chase given the willful and multiple overt acts to collect a debt after it was discharged." The plaintiffs do not allege the manner in which or extent to which they have been damaged.

The defendant seeks the dismissal of this claim, because (a) the discharge injunction may only be enforced by a motion for contempt filed in the bankruptcy case and not by a complaint initiating an adversary proceeding, (2) the complaint does not seek to hold the defendant in contempt but only seeks an award of damages for the alleged violation of the discharge injunction, and (3) since the first mortgage was satisfied and released, the collection letter – which was the only action alleged in the complaint that was taken by the defendant after discharge was entered and, therefore, the only action that could constitute a violation of the discharge injunction – could only have been an attempt to collect the second mortgage, which was not discharged. In their response to the Motion to Dismiss, the plaintiffs concede that they "have not sufficiently pled post-discharge events specifically violated the discharge" and "agree that Count I should be dismissed." Accordingly, the first claim for relief set forth in the amended complaint will be dismissed.

**B.**

The plaintiffs' second claim for relief is for the defendant allegedly violating the automatic stay by failing "to properly account for all payments received for either Proof of claim No. 6-1 or Claim No. 14-1," and rejecting the "timely and necessary payment on Claim No. 6-1" leading to "post-discharge collection activity of what appears to be both claims or an inaccurate balance as to Claim No. 6-1." While the complaint seeks an

award of actual damages, attorney's fees, and punitive damages, it does not allege the manner in which or extent to which the plaintiffs were injured by the alleged stay violations. The defendant contends that "[t]hese allegations present insufficient factual information to show violation of the automatic stay," and that the plaintiffs have not alleged actual damages resulting from actions taken by the defendant.

Where a debtor is injured by a willful violation of the stay, he or she shall recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "A violation is willful if the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *In re Webb*, 472 B.R. 665 (B.A.P. 6th Cir. 2012) (unpublished table decision), *available at* 2012 WL 2329051, at *15 (quoting *In re Printup*, 264 B.R. 169, 173 (Bankr. E.D. Tenn.2001) (citations and internal quotation marks omitted). Thus, the three elements that the plaintiffs must show are: "(1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages." *Collett v. Lee Oil Co. (In re Collett)*, Nos. 13-8033, 12-61190, 2014 WL 2111309, at *4 (B.A.P. 6th Cir. May 21, 2014) (citations omitted).

Failing to account for payments received does not fall within any of the prohibitions listed in 11 U.S.C. § 362(a), which prohibits certain actions by creditors to enforce their rights under loan and security documents; a failure to act cannot constitute a violation of the stay, at least not in the absence of averments that the creditor had a duty to act and that the act had the effect of attempting to collect a debt. Nor does the rejection of the payment represent an attempt to collect a debt, because the defendant's notice correctly stated that there was a zero balance on the first mortgage bearing a loan num-

ber ending in 7654 (asserted by proof of claim no. 14-1), and it is apparent that the rejected payment did represent the escrow payment on the first mortgage because the amount of the payment and the amount of the first mortgage escrow payment were identical. There was nothing improper about returning the escrow payment with respect to the first mortgage since that mortgage had been satisfied. The defendant could not apply the overpayment on the first mortgage to the balance of the second mortgage consistent with the terms of the confirmed chapter 13 plan. *See* 11 U.S.C. § 1327(a). The plaintiffs have not stated any factual basis for their contention that the return or rejection of the overpayment was improper. Because the notice rejecting the payment was accurate and the plaintiffs have not alleged any other conduct prohibited by the automatic stay, the second claim for relief set forth in the amended complaint will be dismissed.

## C.

The plaintiffs' third and final claim for relief is for a bad faith breach of contract. They allege that the defendant did not apply payments in accordance with the Home Equity Line of Credit Agreement and accompanying deed of trust. The plaintiffs assert that they "reasonably believe that Chase has misapplied funds tendered during the Chapter 13 Bankruptcy to Claim No. 6-1 leaving an incorrect balance sought to now be collected." The amended complaint does not allege any facts as to how or the extent to which the defendant misapplied payments. It does not allege what balance is sought to be collected by the defendant or why that balance is incorrect. It does not specify the manner in which or extent to which the plaintiffs were damaged by the alleged improper

application of payments. The defendant contends that the plaintiffs have not alleged facts showing that it misapplied payments.

As evidence of the misapplication, the plaintiffs rely on (i) Exhibit G to the amended complaint, which is the trustee's final account indicating that $19,021.22 had been disbursed on the defendant's $84,516.00 second mortgage claim, (ii) Exhibit C to the amended complaint, which is a notice of payment change filed by the defendant and apparently served on the debtors and their counsel, stating that the monthly mortgage maintence payment on the second mortgage claim would decrease to $292.47, and (iii) Exhibit H to the amended complaint, which is the letter from the defendant's attorney stating that the mortgage loan had been referred to the firm for foreclosure. The plaintiffs fail to explain, either in the amended complaint or in their response to the defendant's motion to dismiss, how the trustee's final account evidences any misapplication of payments by the defendant. The plaintiffs contend that Exhibit C contained an incorrect account number. First, the notice of payment change clearly references the correct proof of claim number for the second mortgage (claim 6). Second, it references the loan number ending in 0747, which is the loan number appearing on the Home Equity Line of Credit Agreement attached to the proof of claim. Thus, the notice accurately references the second mortgage claim notwithstanding the plaintiffs' allegations to the contrary. Third, even assuming the notice contained the wrong account number, the amended complaint contains no factual allegations suggesting how the error resulted in a misapplication of payments by the defendant. As for Exhibit H, the letter does not set forth the balance due on the mortgage. Thus, there are simply no factual contentions in the amended complaint from which this court can discern any error in the

-8-

loan balance of the second mortgage caused by the defendant's purported application of payments made during the chapter 13 case contrary to the terms of the loan agreement or the chapter 13 plan. The factual allegations of the amended complaint simply do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the third claim for relief, too, must be dismissed.

## IV.

At the commencement of the plaintiffs' chapter 13 case, the defendant held two mortgages on their home. The first mortgage (proof of claim no. 14-1) was in the amount of $28,527.25, and the standing chapter 13 trustee distributed $25,527.25 plus interest on the claim. Accordingly, the defendant released the deed of trust in January 2014 and then, a few months later, returned an escrow payment received with respect to the first mortgage. The defendant did nothing wrong insofar as this loan is concerned.

The second mortgage (proof of claim no. 6-1) was in the amount of $84,516.00, and the trustee distributed $19,021.22 on the claim. As the plaintiffs' chapter 13 plan treated the second mortgage as a long-term mortgage under § 1322(b)(5) of the Bankruptcy Code, the unpaid balance of the claim at the end of the case was not discharged. *See* 11 U.S.C. § 1328(a)(1). In December 2015, fourteen months after entry of the discharge order and eleven months after the case was closed, the defendant threatened foreclosure absent the plaintiffs providing information about their financial situation, which may result in temporary or long-term relief and other options. The plaintiffs have not alleged that the collection latter reflected a misapplication of payments since the letter does not demand any specific amount and the amended complaint does not other-

wise allege that the balance sought to be collected is inconsistent with the balance of the claim after deducting the trustee's distributions on the claim. Again, taking the facts stated in the complaint as true, the court can not identify anything the defendant did wrong insofar as this loan is concerned.

The plaintiffs acknowledge that "there is a post-discharge arrearage" or default on the second mortgage (Amended Compl. ¶ 44), yet they have filed a complaint in an apparent last-ditch effort to prevent a foreclosure that, based on the allegations of the complaint, seems well within the defendant's rights. The plaintiffs have admittedly not properly sought relief for any violation of the discharge injunction, and they have failed to allege conduct violating the automatic stay or the terms of any contracts between the parties. The court will, therefore, enter a separate order granting the defendant's Motion to Dismiss.

###